IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

**TWIGHTLA MORRIS,**

     **Plaintiff,**

                                      **Case No.**

**v.**

**CENTER FOR COMPREHENSIVE
SERVICES, INC., d/b/a
NEURORESTORATIVE FLORIDA,
f/k/a NEURORESTORATIVE OF
AVALON PARK,**

     **Defendant.**

_____/

## COMPLAINT

Plaintiff, TWIGHTLA MORRIS ("Morris"), brings this complaint, by and through her attorneys Heidi B. Parker and Egan, Lev & Siwica, P.A., against Defendant, CENTER FOR COMPREHENSIVE SERVICES, INC., d/b/a NEURORESTORATIVE FLORIDA ("Defendant") for violation of the Florida Civil Rights Act of 1992 ("FCRA"), section 760.10(1)(a), Florida Statutes, by terminating her employment because of her handicap or perceived handicap and her race or color in violation of Florida law, and alleges as follows:

## NATURE OF ACTION

1.     This is an action seeking relief from the Plaintiff's wrongful termination on the basis of her ongoing health conditions or disabilities. Additionally, Plaintiff was subjected to a hostile work environment based upon her color or race, being Black and African-American. Plaintiff was terminated because she refused to be cowed by racially charged comments, intimidation and disparate treatment toward herself and subordinates

who were Black and because of her worsening disabilities. The Defendant violated section 760.10 Fla. Stats. Plaintiff seeks damages in excess of $30,000, including declaratory, injunctive and equitable relief, compensatory damages, including but not limited to, back-pay, front-pay, and interest, emotional distress, punitive damages, attorney fees and costs, and any additional relief provided by law.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction pursuant to the FCRA, § 760.11, Fla. Stat.

3.     Venue is proper pursuant to § 47.011 and § 47.051, Fla. Stat., because the events giving rise to this action occurred in Orange County, and the Defendant is a corporation doing business in this Court's judicial circuit.

## PARTIES

4.     Plaintiff, Twightla Morris, is a Black, African-American, residing in Orange County, Florida. On August 10, 2011, she was hired to work at NeuroRestorative Avalon Park, a/k/a Center for Comprehensive Services, Inc., d/b/a NeuroRestorative Florida, as a Case Manager. On February 24, 2012, she was promoted to Program Director, the second highest on-site supervisory position. On April 1, 2020, Defendant terminated Plaintiff for a reason that was pretextual for discrimination. Plaintiff is an aggrieved person as defined by the FCRA, § 760.02(10), Fla. Stats.

5.     Defendant has locations throughout Florida, including Avalon Park, an Orlando neighborhood located in Orange County, Florida, and throughout the United States. Defendant provides post-acute neurologic rehabilitation to its patients. Defendant is an employer as defined by the FCRA, § 760.02(7), Fla. Stats.

## CONDITIONS PRECEDENT

6.      On August 21, 2020, Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), attached as Exhibit A.  The EEOC charge was contemporaneously filed with the Florida Human Rights Commission ("FHRC") pursuant to a Work-sharing Agreement between the EEOC and the FHRC.

7.      On March 9, 2021, the EEOC issued Plaintiff a Notice of Right to Sue, attached as Exhibit B.

8.      Plaintiff satisfied all conditions precedent pursuant to the FCRA and timely files her Complaint.

## FACTS

9.      At all relevant times herein, Patricia Dorrell ("Dorrell"), Executive Director at Avalon Park, was Plaintiff's immediate supervisor. She held the highest on-site location supervisory position.

10.     At all relevant times herein, Jane Imboden ("Imboden"), Vice President of Operations, was Dorrell's immediate supervisor. Imboden's office was located in Tampa, Florida.

11.     Beginning in 2015, Plaintiff began experiencing an environment of discriminatory animus and disparate treatment because of her race or color and handicap or perceived handicap, ultimately leading to Plaintiff's termination.

12.     It began when the Plaintiff took an approved medical leave of absence for a total knee replacement associated with arthritis. On November 21, 2015, her performance appraisal referenced that she was out for a medical procedure in 2015 on family medical leave.

3

13.     In October 2018, Plaintiff was diagnosed with twin carotid brain aneurysms. In December 2018 and January 2019, she had surgery to correct and improve her condition. Plaintiff required ongoing treatment for this condition.

14.     Dorrell and Imboden had knowledge of Plaintiff's disabilities and on-going treatment.

15.     On or about November 2019, Plaintiff sought treatment for a chronic pain condition. Plaintiff informed Dorrell of her condition because she required ongoing treatment to treat the pain and inflammation. She was required to see her doctor on a monthly basis.

16.     During the same time period, Plaintiff experienced a hostile work environment based upon racial animus.

17.     Dorrell and Imboden, both White, treated Black employees, including Plaintiff, as easily manipulated and expendable. When Plaintiff and other Black employees could not be manipulated to violate policies on behalf of Dorrell, they were fired.

18.     Dorrell made racially charged statements to the Plaintiff that were offensive and intimidating to the Plaintiff, as a Black woman.

19.     Dorrell and Imboden were both White.

20.     Dorrell stated to Plaintiff that all Hispanic men are lazy.

21.     Dorrell mockingly mispronounced an Asian-American employee's name. As the Executive Director, Dorrell knew or should have known the correct pronunciation of the employee.

22.     Dorrell stated to Plaintiff that Black employees should be happy to have their jobs.  She stated that their jobs were probably the best jobs they have ever had because they are from the other side of town. Dorrell was referring to the same area of town where Plaintiff stayed, a predominantly Black neighborhood.

23.     Dorrell asked Plaintiff why she was so mean, a common stereotype of confident Black women.

24.     In 2015, Imboden and Dorrell replaced a Black Program Manager with a White male. The Plaintiff was not consulted about this decision because the Program Manager who was terminated and the Plaintiff are both Black. As the Program Director, Plaintiff should have been consulted. This decision caused racial tension between White and Brown/Black employees because the decision was based on race.

25.     In 2016 and 2017, Dorrell repeatedly told Plaintiff not to hire too many Black nurses.

26.     Imboden raised her voice at Plaintiff and another Black staff member when she was upset that she was transferred a call that should have been routed to Avalon Park, making a derogatory comment about it being Martin Luther King Jr. Day.

27.     For approximately two years prior to Plaintiff's termination, during monthly calls with Imboden, Imboden spoke to Plaintiff in a condescending tone and was rude to Plaintiff.  Imboden blamed Plaintiff for patient admission decisions that Dorrell had made.

28.     In 2018, Dorrell told Plaintiff that she was not her first or second choice for the Program Director position, but the White employees offered the position did not want it. Subsequently, Dorrell asked Plaintiff if she would give her notice if she quit her job, the implication being that Dorrell wanted Plaintiff to quit.

29.     In August 2018, Dorrell terminated another Black employee. Again, as the direct supervisor, Plaintiff should have been included in the employment decision but was not consulted because the employee who was terminated and Plaintiff are both Black.

30.     Dorrell alienated the Plaintiff by excluding her from decisions under her purview and asking subordinates for information about Plaintiff instead of talking to Plaintiff directly.

31.     Dorrell and Imboden treated Plaintiff different than they did White, non-disabled employees.  Plaintiff was not allowed to go to training that other similarly situated White employees were allowed to attend. Plaintiff was held to a higher standard in terms of dress and policy. Plaintiff was challenged anytime she wanted or needed to use paid time off, while similarly situated White employees were freely granted time off. Plaintiff was denied requests to telecommute, while similarly situated White employees were granted such requests.

32.     On March 8, 2020, a Brown nurse used a blanket to distract a patient instead of placing a spit hood over his face. Plaintiff was off work over the weekend, and March 8, 2020 was a Sunday.

33.     On March 9, 2020, Plaintiff was informed of the incident and immediately began the process of preparing an incident report. Dorrell was aware of the incident prior to Plaintiff. The investigation had already begun when Plaintiff started completing the paperwork.  Plaintiff completed the reporting process in a timely manner.

34.     On April 1, 2020, Plaintiff was terminated purportedly for not reporting the incident in a timely manner.

6

35.     Plaintiff was replaced by her former subordinate, Robin McInnis, a White woman, with no known health conditions.

36.     Plaintiff performed her duties in a professional and competent manner, faithfully followed all of her supervisors' instructions, and abided by all of the Defendant's rules and regulations.

37.     All of Plaintiff's performance evaluations were positive; Plaintiff made significant positive contributions to the organization and had no disciplinary history.

## COUNT I

### HANDICAP DISCRIMINATION (ACTUAL AND PERCEIVED)

38.     Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1 through 37 of this Complaint.

39.     Beginning in November 2018, Plaintiff was diagnosed with a disability and required two surgeries thereafter.  After the surgeries, Plaintiff notified the Defendant that she suffered permanent effects associated with her disability and would require ongoing treatment.

40.     Around the same time, Plaintiff also began receiving increased treatment for a chronic pain condition that was ongoing. Plaintiff notified the Defendant that her condition may require surgery.

41.     Plaintiff has a disability as defined by law. Plaintiff has a physical impairment that substantially limits major life activities, including but not limited to, sitting, standing, walking, working, exercising, and sleeping.

42.     The Defendant and its agents perceived Plaintiff to be so disabled that she would require additional time off work in the future and would be unable to perform her

job duties. The perceived disability involved a major life activity as referenced above, and the Defendant and their agents believed the perceived disability to be substantially limiting and significant.

43.     Plaintiff was able to perform the essential functions of her job with reasonable accommodations, including reasonable time off for treatment and follow-up appointments.

44.     Defendant refused to accommodate Plaintiff any longer and discriminated against her because of her disability or perceived disability when it terminated her on April 1, 2020.

45.     Defendant's reason for termination was unreasonable and unsupported.

46.     Plaintiff was replaced by a healthy individual whom Plaintiff had trained.

47.     Plaintiff suffered emotional distress, mental anguish and loss of dignity, past and future pecuniary losses, inconvenience, bodily injury, loss of enjoyment of life and other non-pecuniary losses, along with back and front pay with interest and other benefits. These damages have occurred in the past, are permanent, and continuing.

48.     The actions of Defendant and its agents were willful and wanton.

49.     **Requested Remedy**:  Plaintiff requests:

a.  that she be awarded reinstatement or front-pay; back-pay and interest from the date of termination; any other legally available general and compensatory damages, and punitive damages;

b.  that this Court grant equitable relief against Defendant, mandating Defendant's obedience to the laws enumerated herein and any other equitable and injunctive relief to Plaintiff;

c.  that this Court award Plaintiff reasonable attorneys' fees and costs; and

d.  any further relief as the court deems just.

## COUNT II

### RACE OR COLOR DISCRIMINATION

50.    Plaintiff realleges and incorporates, as if fully set forth herein, paragraphs 1 through 37 of this Complaint.

51.    Plaintiff is a victim of intentional race or color discrimination because she was treated differently than similarly situated employees who worked for the Defendant and was ultimately terminated based on race.

52.    Plaintiff was deemed to have violated a policy that the Defendant and its agents intentionally failed to apply when the same or similar action was taken by White employees. Additionally, White employees who were charged with similar violations of policy were not terminated but were given lesser forms of discipline or a performance improvement plan.

53.    There were a series of actions taken by Plaintiff's supervisors over the course of approximately five years that supports the claim that Defendant and their agents' decision to terminate the Plaintiff was discriminatory. Plaintiff was treated and observed other Black employees treated with hostility and disrespect. Plaintiff was kept out of the decision-making to terminate Black employees due to the Defendant's perception that Plaintiff would not support the termination decision based upon race. Plaintiff was instructed to make hiring decisions based on skin color and race.

9

54.     Defendant and its agents condoned and ratified the differential treatment of White employees by participating in racial discrimination toward Brown and Black employees, including the Plaintiff.

55.     Plaintiff reasonably believed that internal complaints of racial discrimination would not change her circumstances or could make them worse because the perpetrators were the two highest decisionmakers for the Defendant's Avalon Park location. Any complaints would have been routed to Imboden and Dorrell. These circumstances created a stressful environment that aggravated Plaintiff's disabilities.

56.     The discrimination complained of affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

57.     The events set forth herein led to Plaintiff's termination based upon contrived allegations. The Defendant did not have a legitimate, non-discriminatory reason for terminating the Plaintiff.

58.     Plaintiff was replaced by a White individual whom Plaintiff had trained.

59.     The actions of Defendant and its agents were willful and wanton.

60.     Plaintiff has suffered emotional distress, mental anguish and loss of dignity, past and future pecuniary losses, inconvenience, bodily injury, loss of enjoyment of life and other non-pecuniary losses, along with back and front pay with interest and other benefits.  These damages have occurred in the past, are permanent and continuing.

61.     **Requested Remedy**:  Plaintiff requests:

a.  that she be awarded reinstatement or front-pay; back-pay and interest from the date of termination; any other legally available general and compensatory damages; and punitive damages;

b. that this Court grant equitable relief against Defendant, mandating Defendant's obedience to the laws enumerated herein and any other equitable and injunctive relief to Plaintiff;

c. that this Court award Plaintiff reasonable attorneys' fees and costs; and

d. any further relief as the court deems just.

**PLAINTIFF DEMANDS TRIAL BY JURY**

Respectfully submitted,

/s/ Heidi B. Parker

_____

Heidi B. Parker
Fla. Bar No. 1008110
EGAN, LEV & SIWICA, P.A.
Post Office Box 2231
Orlando, Florida 32802
Telephone: (407) 422-1400
Facsimile: (407) 422-3658
E-mail: hparker@eganlev.com
Secondary E-mail: bhumphrey@eganlev.com

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| Agency | CHARGE NUMBER |
|---|---|
| ___ FEPA | |
| _X_ EEOC | 511-2020-02784 |

FLORIDA COMMISSION ON HUMAN RELATIONS and EEOC
*State or local Agency, if any*

| NAME *(indicate if Mr., Ms., Mrs.)*<br>Twightla Morris | HOME TELEPHONE *(Include Area Code)*<br>(407) 748-0586 |
|---|---|
| STREET ADDRESS          CITY, STATE AND ZIP CODE<br>5825 Hafer Lane, Orlando, FL  32808 | DATE OF BIRTH<br>07/16/1960 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below)*

| NAME<br><br>NeuroRestorative | NUMBER OF EMPLOYEES<br>15+ | TELEPHONE *(Include Area Code)*<br>(321) 354-0023 |
|---|---|---|
| STREET ADDRESS          CITY, STATE AND ZIP CODE<br>3701 Avalon Park W Blvd., #100, Orlando, FL 32828 | | COUNTY<br>Orange |
| NAME | | TELEPHONE *(Include Area Code)* |
| STREET ADDRESS          CITY, STATE AND ZIP CODE | | COUNTY |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

_x_ RACE       _x_ COLOR       ___ SEX       ___RELIGION       ___NATIONAL ORIGIN

___RETALIATION       _x_ AGE       _x_ DISABILITY       ___OTHER *(Specify)*

Date of Discrimination- 04/01/2020

LATEST to the present

___ Continuing Action

THE PARTICULARS ARE        *(If additional space is needed, attach extra sheet(s)):*

See attached.

| _X_ I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY (When necessary for State and Local Requirements)<br><br>*Mabel Silva*<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>Date 8/12/20    *Charging Party (Signature)* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, Month and Year)<br>8/12/20 |

**Received**

AUG 2 1 2020

Tampa Field Office

1



MABEL SILVA
Notary Public – State of Florida
Commission # GG 169410
My Comm. Expires Apr 13, 2022
Bonded through National Notary Assn

**Received**

AUG 2 1 2020

Tampa Field Office

511-2020-02784

# **Particulars of case**

## **Overview**

1.      NeuroRestorative, located in Avalon Park, Orlando, Florida, Executive Director Patricia Dorrell, and Vice President of Operations Jane Imboden discriminated against me because of my disability, race/color and/or age and subjected me to a hostile work environment. Their actions, discussed below, violated Title VII of the Civil Rights Act of 1964, the Americans with Disabilities, Age Discrimination in Employment Act, and section 760.10, Florida Statutes.

## **Background**

2.      NeuroRestorative is a transitional living and rehabilitation facility for clients with traumatic brain and spinal cord injuries and behavioral disorders.

3.      I am a sixty year old African American woman.  I began working at NeuroRestorative on August 10, 2011, as a case manager and was promoted to Program Director on February 24, 2012.

4.      At all relevant times, NeuroRestorative maintained a work environment imbued with racially demeaning language and disparate treatment of employees of color.  Patricia Dorrell frequently made racially charged comments to me that I reported to Barbara Williams and Jasset Rivera, who were Program Managers and hiring managers at the time.

5.      At all relevant times, I suffered from high blood pressure and related conditions for which I had taken time off and notified Patricia Dorrell of my conditions.

6.      I was terminated on April 1, 2020, after an internal investigation related to a subordinate's misconduct.

7.      I was replaced by a subordinate, who I trained and mentored, a White female in her early 30's, Robin McInnis.

## **Hostile Work Environment**

8.      Patricia Dorrell and Jane Imboden, both White, treated Black employees as easily manipulated and expendable.  Patricia Dorrell was my direct supervisor and the only management employee above me at the Avalon Park program.  Jane Imboden was next in the chain of command.  She was a regional Vice President located in Tampa, FL.

9.      Throughout my employment as Program Director, Patricia Dorrell made racially charged statements to me.  She stated that all Hispanic men are lazy.  She referred to Dr. Li Liu, an Asian Medical Director, as Dr. Vu.  As an Executive Director, she knew the correct pronunciation of Dr. Liu's name.  Patricia Dorrell stated that Barbara Williams, a Black residential supervisor and Jackie Wiggins, a Black Team Lead should be happy to have their

2

511-2020-02784

jobs, "probably the best jobs they have ever had because they are from the other side of town", referring to an area of town where I also reside, a predominantly Black area.

10.     Patricia Dorrell asked me why I was so mean, a common stereotype of Black women.

11.     In 2015, Jane Imboden and Patricia Dorrell made a decision to replace a Black Program Manager with a White male.  I was not consulted even though I should have been.  This caused racial tension between White and Brown employees and Black employees.

12.     In 2016 and 2017, Patricia Dorrell told me not to hire too many Black nurses.

13.     Several years ago, Jane Imboden screamed at me and another Black staff member, "I don't care whose day it is!" when she was upset that she was transferred a call that should have been routed to Avalon Park.  It was Martin Luther King Jr. Day.

14.     For approximately two years prior to my termination, during monthly calls with Jane Imboden, Patricia Dorrell and others within the program, Jane Imboden was condescending and rude to me blaming me for patient admission decisions that Patricia Dorrell had made.

15.     In 2018, Patricia Dorrell told me that I was not her first or second choice for the Program Director position, suggesting that someone else made the decision to promote me to that position.  One day, she asked me if I would give her notice if I quit my job.

16.     In August 2018, Patricia Dorrell terminated Barbara Williams.  As Barbara Williams' direct supervisor, I should have been included in the employment decision, but I was not included.  Prior to becoming the Program Director in 2012, Patricia Dorrell relied upon Barbara Williams to cut corners on her behalf.  When I became Program Director, I was responsible for supervising Barbara Williams and made sure that she was following the policies.  Patricia Dorrell began questioning Ms. Williams about me.  Barbara Williams was a good employee and should not have been terminated.  It is my understanding that Ms. Williams filed an EEOC charge after her termination.

17.     Throughout my employment as Program Director, Patricia Dorrell would ask my subordinates for information about me instead of talking to me directly.

**Disability**

18.     In 2015, I took an approved medical leave of absence for a total knee replacement as a result of a diagnosis of arthritis.  I notified Patricia Dorrell of my disability and treatment.  My leave of absence was noted on my performance evaluation.

19.     In October 2018, I was diagnosed with twin carotid brain aneurysms.  In December 2018 and January 2019, I had surgery as a result.  I required continued treatment of my conditions through the date of my termination.  Patricia Dorrell and Jane Imboden were notified of my condition and the permanent effects from the surgery.

Received                    3

AUG 2 1 2020

Tampa Field Office

511-2020-02784

20.     I also had a nerve impingement that caused a significant amount of pain and impacted my spine. I informed Patricia Dorrell because I was receiving on-going conservative treatment to treat the pain and inflammation through my date of termination.  Surgery was the next indicated treatment.

21.     My disabilities were exacerbated by the hostile work environment, discrimination and unlawful termination.

22.     I was discriminated against because of my disabilities or the perception that I am disabled.

**Disparate Treatment**

23.     Patricia Dorrell and Jane Imboden treated me different than they did other White, non-disabled employees.

24.     Patricia Dorrell and Jane Imboden never recommended me for additional training.  They made peer to peer opportunities for other Program Directors to train in other programs out of state.

25.     Patricia Dorrell and Jane Imboden allowed other Program Directors to dress more casually than I.

26.     Patricia Dorrell granted subordinates the use of vacation time without being challenged.  I was challenged anytime I wanted or needed to use my paid time off.

27.     Patricia Dorrell granted subordinates' requests to telecommute.  However, Ms. Dorrell unreasonably denied my request to work from home.

**Reason for Termination was Pretext**

28.     On or about March 8, 2020, a nurse on my staff improperly dropped a blanket over a patient's head instead of waiting for other staff members to properly place a spit hood over his face.  Her actions were a clear violation of policy.  Since March 8, 2020, was a weekend, I was not at work.  I was informed about the nurse's conduct at a staff meeting on March 9, 2020.  I immediately began the process of preparing an incident report and notified my supervisor.  I followed all required and appropriate reporting requirements in a timely manner.

29.     On April 1, 2020, I was terminated for untimely reporting the incident.  This was pretextual for discrimination.

30.     My performance evaluations were always meets or exceeds expectations.

31.     I made significant positive contributions to the organization and had no disciplinary history.

32.     My replacement was Robin McInnis, a White woman in her early 30's with no known health conditions.

**Received**

AUG 2 1 2020                    4

**Tampa Field Office**

511-2020-02784

**Charge**

33.     I charge NeuroRestorative with violating my rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the Americans with Disabilities Act, as amended, Age Discrimination in Employment Act and Section 760.10, Florida Statutes.

34.     As a direct result of the harassment and discrimination described above, I have suffered damages including, but not limited to humiliation, embarrassment, emotional and physical distress and mental anguish.

I swear under penalty of perjury that I have read the above charge and that it is true and correct to the best of my knowledge, information and belief.  This charge is not intended to be exhaustive but it is representative of the treatment to which NeuroRestorative has subjected me.

This statement is true and correct to the best of my knowledge.

Dated: August 12, 2020

Twightla Morris

The foregoing instrument was acknowledged before me by means of ☑ physical presence or ☐ online notarization, this 12th day of August, 2020, by Twightla Morris

Signature of Notary Public

My commission expires: April 13, 2022

MABEL SILVA
Notary Public – State of Florida
Commission # GG 169410
My Comm. Expires Apr 13, 2022
Bonded through National Notary Assn.

Personally Known ___ OR Produced Identification ✓
Type of Identification Produced: Florida drivers license

Received

AUG 2 1 2020

Tampa Field Office

5

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Twightla Morris**<br>**5825 Hafer Lane**<br>**Orlando, FL 32808** | From: | **Tampa Field Office**<br>**501 East Polk Street**<br>**Room 1000**<br>**Tampa, FL 33602** |

|  | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
| --- | --- | --- |
| **511-2020-02784** | **STANLEY MOFFETT,**<br>**Investigator** | **(813) 202-7922** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|  | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| --- | --- |
|  | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
|  | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
|  | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| X | The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit.  This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge. |
|  | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
|  | Other *(briefly state)* |

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Evangeline Hawthorne*                                         March 9, 2021

**Evangeline Hawthorne,**
**Director**                                                       *(Date Issued)*

Enclosures(s)

cc:

Neurorestorative Avalon Park
c/o LIttler Mendelson, P.C. - GSC
Attn: Sarah Salerno, Esq.
2301 McGee St, Suite 800
Kansas City, MO 64108

Egan, Lev, Lindstrom & Siwica, P.A.
Attn: Heidi B. Parker, Esq.
231 E. Colonial Drive
Orlando, FL 32801

RECEIVED
MAR 15 RECD
EGAN, LEV & SIWICA, P.A.

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice _and_ within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do _not_ relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request _within 6 months_ of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➢ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
➢ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)),   **"major life activities"  now include the operation of major bodily functions,** such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
➢ **Only one** major life activity need be substantially limited.
➢ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
➢ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
➢ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**
➢ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
➢ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
➢ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
➢ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.